UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVES JUNIOR RODNEY,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden of Otay Mesa Detention Center; PATRICK DIVVER, San Diego Field Office Director, Immigration and Customs Enforcement and Removal Operations; TODD LYONS, Acting Director of Immigration Customs Enforcement; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Respondents. | Case No.: 3:26-cv-04666-LEK-GC<br><br>**ORDER: DENYING "PETITION FOR WRIT OF HABEUS [sic] CORPUS" WITHOUT PREJUDICE; AND GRANTING IN PART AND DENYING IN PART PETITIONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE** |

On August 14, 2026, Petitioner Yves Junior Rodney ("Petitioner") filed his "Petition for Writ of Habeus [sic] Corpus" ("Petition"). [Dkt. no. 1.] The respondents, identified in the Petition as Christopher LaRose, Warden of Otay Mesa Detention Center; Patrick Divver, San Diego Field Office Director, Immigration and Customs Enforcement and Removal Operations; Todd Lyons, Acting Director of Immigration Customs Enforcement; Markwayne Mullin, Secretary of the Department of Homeland Security; Todd Blanche, Attorney General of the United States; U.S. Department of Homeland

Security ("DHS"); and U.S. Immigration and Customs Enforcement ("ICE" and collectively "Respondents"), filed a return to the Petition ("Return") on August 24, 2026. [Dkt. no. 4.] Petitioner filed a traverse in support of the Petition ("Traverse") on September 1, 2026. [Dkt. no. 5.]

On November 11, 2026, Petitioner filed an Application for Temporary Restraining Order and Order to Show Cause ("Application"). [Dkt. no. 7.]

## BACKGROUND

Petitioner is a thirty-five-year-old citizen of Haiti. [Petition at ¶ 14.] His father, a citizen of the United States,[1] made arrangements for Petitioner to come to the United States when Petitioner was nine years old. [Id. at ¶ 1.] Petitioner entered the country on August 30, 2000 on a non-immigrant, visitor for pleasure, B-2 visa that permitted him to remain in the country until March 1, 2001, but Petitioner remained in the country past that date. See id. at ¶ 2; Return, Exh. 1 (DHS Notice to Appear, Form I-862, dated 11/10/25 ("Form I-862")) at PageID.36; Return, Exh. 2 (DHS Additional Charges of Inadmissibility/Deportability, Form I-261, dated 11/21/25) at PageID.41.

Petitioner's father intended that Petitioner would become a lawful permanent resident of the United States and, eventually, a citizen. See Petition at ¶ 30. When Petitioner arrived in the United States, Petitioner's father immediately took steps to make Petitioner eligible for a green card. Petitioner made several attempts over the years to obtain a green card by filing Form I-485 applications. These attempts were unsuccessful,

---

[1] The person identified as Petitioner's father, see, e.g., Petition at ¶ 1, is Joshua Dertes, Petitioner's step-father. See Return, Exh. 3 (DHS Record of Deportable/Inadmissible Alien, Form I-213, dated 10/21/25 ("Form I-213")) at 2. "Mr. Dertes became [Petitioner's] step-father when he was 4 years old and is the man he has always known as his father." [Application, Declaration of Brian J. McGoldrick in Support of Request for Temporary Restraining Order ("McGoldrick Declaration") at pg. 2.]

but the applications required Petitioner to present himself for biometrics and interviews. Petitioner emphasizes that, while those applications were pending, he was never determined to be a flight risk or a danger to the community. See id. at ¶ 31.

Petitioner states that, on October 1, 2025, while he was driving to his father's shop, he was pulled over by an undercover police officer who stated that he would be detained because he was living in the country illegally. The police officer handcuffed Petitioner and waited for ICE officers to arrive. See id. at ¶ 32. Petitioner was detained by ICE, taken to a holding center for booking, then taken to a Fort Myers ICE facility, and then to "Alligator Alcatraz," where he was held for eighteen days. See id. After that, Petitioner was held at a transition center for seven months, and then he was sent to the Otay Mesa Detention Center ("OMDC"), where he was detained through the date that he filed the Petition. Petitioner states that he was never shown an arrest warrant. See id. At the time of his arrest, he was not trying to flee or cause harm, and he had not been charged with a crime. Further, he was never given notice that his parole was being revoked,[2] and he was not given a pre-detention hearing. See id.

---

[2] Petitioner argues "[t]his case concerns the detention provisions of 8 U.S.C. §§ 1226(a) and 1225(b)(2) and the revocation of parole." [Petition at ¶ 27.] However, it is not clear from the record whether, and if so when, Petitioner was granted parole. Petitioner argues the Immigration and Nationality Act ("INA") "prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings conducted pursuant to []8 U.S.C. § 1229a or they can be released on Parole." [Id. at ¶ 23.] The only removal proceedings that are indicated in the record were initiated after Petitioner's arrest and detention in October 2025. See Return, Exh. 1 (Form I-862). Petitioner also argues that, "[o]nce a determination has been made that a noncitizen should not be detained, they may be released on conditional parole or humanitarian parole." [Petition at ¶ 29.] Petitioner's argument appears to be that, because he applied for a green card several times, the government was aware that he was a noncitizen present in the country, and therefore the government effectively granted him parole because it did not detain him while his applications were pending. See, e.g., id. at ¶ 31. If that is the basis for Petitioner's assertion that his parole was revoked when he was detained in October 2025, the Petition does not cite legal authority supporting his effective-grant-of-parole theory.

On March 31, 2026, an immigration judge denied Petitioner's Form I-485 application and ordered him removed to Haiti. See id. at ¶ 33; Return, Exh. 7 (Order of the Immigration Judge, dated 3/31/26 ("3/31/26 IJ Order")). On April 10, 2026, Petitioner filed an appeal to the Board of Immigration Appeals ("BIA"). See Petition at ¶ 33; Return, Exh. 8 (BIA filing receipt acknowledging receipt on 4/10/26). At the time that the Petition was filed, there was no final order of removal in Petitioner's removal proceeding. See Petition at ¶ 33. After the briefing for the instant Petition was complete, the BIA dismissed Petitioner's appeal. See Respondents' Supplemental Briefing ("Supplement"), filed 10/5/26 (dkt. no. 6), Exh. 1 at PageID.79-80 (BIA decision, filed 9/8/26). Petitioner had thirty days from the date of the BIA's decision to seek review by the Ninth Circuit Court of Appeals. See id. at PageID.78 (notice, dated 9/8/26, to Petitioner from the BIA Office of the Clerk, Chief Clerk, transmitting the BIA's decision). Petitioner has not filed anything in this case indicating that he sought review by the Ninth Circuit of the final order of removal.

The Petition asserts the following claims: the October 2025 revocation of Petitioner's liberty violated his due process rights ("Count I"); see Petition at pgs. 12-13; the revocation of Petitioner's liberty violated the Administrative Procedure Act ("APA"), Title 5 United States Code Section 706(2)(A) ("Count II"); see id. at pgs. 13-15; and Petitioner's prolonged detention without a final order of removal violates his due process rights ("Count III"), see id. at pgs. 15-17. In addition, Count III contains an allegation that the "[c]onditions of confinement also raise constitutional concerns as the medical treatment available at the Otay Mesa Detention Center is not adequate to address

---

Because the Petition does not establish a factual or legal basis for the assertion that Petitioner was on parole at the time of his detention, this Court will not consider the Petition's arguments based on the revocation of parole.

Mr. Rodney's health conditions." [Id. at ¶ 58.] Petitioner alleges he is entitled to, *inter alia*, immediate release. See id. at pg. 20.

Petitioner argues that a bond hearing is not the appropriate relief because his "detention was unlawful, *ab initio*." See id. at ¶ 59. Petitioner also argues that ordering a bond hearing would be futile because he had a bond hearing earlier this year, and the immigration judge denied bond based on what Petitioner describes as his "minor convictions from 13 years prior." See id. at ¶ 61; see also Return, Exh. 5 (Order of the Immigration Judge, dated 2/23/26 ("2/23/26 IJ Order")).

Respondents urge this Court to dismiss the Petition. See Return at 6. They argue that Petitioner is being detained, pursuant to Title 8 United States Code Section 1226(a), as a visa overstay, pending a decision in his removal proceedings. See id. at 1-2. Respondents assert that Petitioner has already received the bond hearing that he was entitled to under Section 1226(a). Respondents emphasize that Petitioner did not appeal the 2/23/26 IJ Order to the BIA. See id. at 2-3; id., Exh. 6 (EOIR Courts & Appeals System Printout). Respondents argue the Petition should be dismissed without prejudice, or the case should be stayed until Petitioner exhausts his administrative remedies. See Return at 3. Respondents also argue the Petition should be dismissed as moot because "there is no controversy concerning re-detention/release for this Court to resolve." See id. at 4-5. Finally, Respondents argue this Court should reject Petitioner's APA claim because the Petition does not identify a final agency action that is subject to review. See id. at 5-6.

## STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his or her confinement pursuant to Title 28 United States Code Section 2241. See 28 U.S.C. § 2241(a); Zavala v. Ives, 785 F.3d 367, 370 n.3 (9th Cir. 2015). The sole judicial body able to review challenges to final orders of deportation, exclusion, or

removal is the court of appeals. See 8 U.S.C. § 1252(a)(1), (5); see also Alvarez-Barajas v. Gonzales, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process - for example, a claim of indefinite detention - federal habeas corpus jurisdiction remains in the district court. See Alvarez v. Sessions, 338 F. Supp. 3d 1042, 1047-48 (N.D. Cal. 2018) (citations omitted); see also Nadarajah v. Gonzales, 443 F.3d 1069, 1076 (9th Cir. 2006).[3]

## DISCUSSION

### I. Count I

#### A. Framework Governing Petitioner's Detention

This Court turns first to Petitioner's claim alleging that his October 2025 arrest and detention violated his due process rights. The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment - from government custody, detention, or other forms of physical restraint - lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citation omitted). This protection applies to noncitizens as it does to United States citizens. See Wong Wing v. United States, 163 U.S. 228, 238 (1896) ("[E]ven aliens shall not . . . be deprived of life, liberty or property without due process of law.").

There is no dispute that Petitioner's detention is governed by Title 8 United States Code Section 1226(a). See Return at 1. Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C.

---

[3] Nadarajah was abrogated on other grounds by Jennings v. Rodriguez, 583 U.S. 281 (2018), as recognized by Esquivel-Ipina v. LaRose, 812 F. Supp. 3d 1073, 1077 (S.D. Cal. 2025).

§ 1226(a). Title 8 United States Code Section 1357(a)(2), in turn, provides that an immigration officer may

> arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service[[4]] having authority to examine aliens as to their right to enter or remain in the United States.

Section 1357(a)(2)'s "'reason to believe' requirement is the equivalent of 'the constitutional requirement of probable cause.'" M-J-M-A- v. Hermosillo, 822 F. Supp. 3d 1147, 1172 (D. Or. 2026) (quoting Tejeda-Mata v. Immigr. Naturalization Serv., 626 F.2d 721, 725 (9th Cir. 1980)).

> Under 8 C.F.R. § 287.3(c)-(d), following a warrantless arrest an officer must promptly advise the individual of the reasons for arrest and of the right to representation. Within 48 hours, the government must determine whether the person will remain in custody or be released on bond, and whether a Notice to Appear and warrant of arrest will issue. Id. § 287.3(d). Only in the event of an "emergency or other extraordinary circumstance" may that determination be delayed, and then only "within an additional reasonable period of time." Id.
>
> Few courts have interpreted what constitutes an "additional reasonable period of time" under Section 287.3. In Turkmen v. Ashcroft, noncitizen detainees arrested in the wake of the

---

[4] "The term 'Service' means the Immigration and Naturalization Service of the Department of Justice [('INS')]." 8 U.S.C. § 1101(a)(34). The INS "was dissolved in 2002 by the Homeland Security Act, Pub. L. No. 107-296 § 101(a) (2002). Under the Act, most of the INS's functions were transferred to various components of the newly constituted Department of Homeland Security[.]" Al Mutarreb v. Holder, 561 F.3d 1023, 1024 n.1 (9th Cir. 2009).

> September 11, 2001 attacks alleged that delayed service of Notices to Appear violated their due process rights. No. 02-CV-2307 (JG), 2006 WL 1662663, at *1, *45 (E.D.N.Y. June 14, 2006), *aff'd in part, vacated in part, and remanded*, 589 F.3d 542 (2d Cir. 2009). After their respective arrests, two plaintiffs were not served with Notices to Appear for sixteen days, one for seven days, and another for five days. Id. at *45. The district court rejected their claim, holding that the September 11 attacks qualified as an "extraordinary circumstance" and that delays of several days were reasonable in that context. Id. at *45. The court cautioned, however, that "[t]here is no doubt that at some point after arrest, an alien's due process rights would be violated if he were detained without being served a Notice to Appear." Id. at *46 (emphasis omitted).

Marin v. Noem, Case No. 2:25-cv-09343-CV (SSCx), 2025 WL 3158094, at *3 (C.D. Cal. Oct. 4, 2025) (alteration in Marin).

### B. Petitioner's Detention

Respondents assert that Petitioner was taken into custody by immigration officers on October 21, 2025. See Return at 1 (citing id., Exh. 3 (Form I-213), Exh. 4 (DHS Warrant for Arrest of Alien, Form I-200, dated 10/21/25 ("Form I-200"))). In contrast, Petitioner alleges that he was arrested without a warrant on October 1, 2025. See Petition at ¶ 32. For purposes of this Court's current consideration of the Petition, this Court will accept Petitioner's statements regarding the date of his arrest because, even if Petitioner established a due process violation, he is not entitled to the relief that he seeks.

Having accepted Petitioner's representation that his current detention began on October 1, 2025, this Court finds, for purposes of the instant Order, that Petitioner was detained without a warrant for twenty days. Further, the warrant issued on October 21, 2025, see Return, Exh. 4 (Form I-200), was not served on him "within an additional reasonable period of time" after his warrantless arrest. See § 287.3(d). Petitioner's detention was therefore lawful at its inception only if the arresting officer had reason to believe that Petitioner was present in the United States in violation of the immigration laws and was likely to escape before a warrant could be obtained. See 8 U.S.C.

§ 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii). Because there is no indication in the existing record that those requirements were met, this Court concludes that Petitioner's detention without a warrant violated Section 1357(a)(2).

Turning to the issue of the appropriate relief, this Court notes that Petitioner seeks immediate release, and does not request a bond hearing as an alternative. See Petition at pg. 20; see also id. at pgs. 17-19 (section titled "ORDERING A BOND HEARING IS NOT THE APPROPRIATE RELIEF"). In a recent case that also involved visa overstays, this Court ruled that the petitioners' warrantless arrests violated their Fifth Amendment due process rights and that their immediate release was the appropriate remedy. See Pang v. Warden of Imperial Reg'l Det. Facility, Case No. 3:26-cv-05047-LEK-JLB, 2026 WL 2925852, at *5 (S.D. Cal. Sept. 29, 2026). However, that case is distinguishable from the instant case because the petitioners in Pang had pending asylum applications, and they had no known criminal history. See id. at *1. In contrast, at the time that the Petition was filed, Petitioner's most recent application regarding his immigration status had been denied and he had been ordered removed, although there was a pending appeal. See Petition at ¶ 33 (noting that the 3/31/26 IJ Order denied Petitioner's Form I-485 application); see also Return, Exh. 7 (3/31/26 IJ Order) at PageID.57 (stating that Petitioner's application for adjustment of status under Section 245(a) of the INA was denied). The BIA has since dismissed Petitioner's appeal from the 3/31/26 IJ Order, see Supplement, Exh. 1 at PageID.79-80 (BIA decision), and, in doing so, the BIA adopted and affirmed the 3/31/26 IJ Order, see id. at PageID.79. Thus, the 3/31/26 IJ Order is now a final order of removal. See 8 U.S.C. § 1101(a)(47)(A), (B)(i). Petitioner also has criminal convictions in 2009 and 2013. See Petition at ¶ 42.

In light of the unique circumstances presented by Petitioner's prior convictions and the final order of removal, this Court concludes that ordering Petitioner's immediate release is not an appropriate remedy for the due process violation. Cf.

Sarfarzi-Esfahari v. Murray, No. 1:25-cv-00774 JLT EPG (HC), 2026 WL 523668, at *1 (E.D. Cal. Feb. 25, 2026) ("Because Petitioner's 2019 DUI conviction post-dates his 2005 release from ICE custody on an Order of Supervision, the Court concludes that this unique circumstance warrants a bond hearing before a neutral adjudicator to determine flight risk or danger." (citing Hernandez-Castro v. Lyons, No. 1:25-CV-01574 JLT SAB, 2025 WL 3771344, at *9 (E.D. Cal. Dec. 31, 2025) (ordering a bond hearing for individual with final order of removal because of unique circumstances); Trejo v. Warden of ERO El Paso E. Montana, No. EP-25-CV-401-KC, 2025 WL 2992187, at *11 (W.D. Tex. Oct. 24, 2025) (ordering bond hearing instead of immediate release for individual with final order of removal, noting court's flexibility in fashioning federal habeas remedy))). This Court concludes that a bond hearing is the appropriate remedy, but Petitioner argues that such relief would be futile because he had a bond hearing after his October 2025 arrest and detention, and the immigration judge denied bond because of Petitioner's criminal convictions. See Petition at ¶ 61; see also Return, Exh. 5 (2/23/26 IJ Order) at PageID.50 (stating Petitioner's bond request was denied because he "has a record of crim offenses that cause the [immigration judge] to find that [Petitioner] has not met his burden in establishing [Petitioner] is not a [Danger to the Community]/Public Safety Risk"). Because Petitioner only requests immediate release, and this Court has concluded that immediate release is not appropriate under the circumstances, the Petition must be denied as to Count I. However, the denial is without prejudice to the filing of an amended petition that seeks relief other than immediate release.

## II. Count II

Count II alleges that, when Respondents arrested and detained Petitioner in October 2025 without a warrant and without an individualized finding that he was either a danger to the community or a flight risk, they abused their discretion. [Petition at ¶¶ 47-50.] Petitioner argues the decision must be set aside pursuant to Title 5 United States Code Section 706(2)(A). See id. at ¶ 44.

"[T]he APA's waiver of sovereign immunity contains several limitations, including a proviso in [Title 5 United States Code Section] 704 that only final agency action and agency action otherwise reviewable by statute are subject to judicial review." Navajo Nation v. Dep't of the Interior, 876 F.3d 1144, 1169 (9th Cir. 2017) (citation and internal quotation marks omitted). "A government agency terminating an alien's status is subject to review under the APA as a final agency action when the termination has lasting consequences that would not be cured even if the agency reinstated status through its internal processes." Aguilar-Perez v. LaRose, Case No. 25cv3409-LL-DDL, 2026 WL 92045, at *5 (S.D. Cal. Jan. 13, 2026) (citing Jie Fang v. Dir. U.S. Immigr. & Customs Enf't, 935 F.3d 172, 183 (3rd Cir. 2019); Doe v. Noem, 778 F. Supp. 3d 1151, 1159 (W.D. Wash. April 17, 2025)). Where the government takes the position that the petitioner is inadmissible and the petitioner is in removal proceedings, the "termination of [the petitioner's] parole status is reviewable as a final agency action that will have lasting incurable consequences." Id.

Although Petitioner did not have parole status at the time of his October 2025 arrest and detention, he was living at liberty while his Form I-485 application was pending. Cf. Petition at ¶ 31 (stating that, prior to his October 2025 arrest, there was never a determination that his detention was necessary while his Form I-485 applications were pending); id. at ¶ 33 (stating the 3/31/26 IJ Order denied the Form I-485). The termination of that status had lasting incurable consequences and is therefore reviewable as a final agency action. See Aguilar-Perez, 2026 WL 92045, at *5.

> The APA requires courts to hold challenged final agency actions unlawful when the actions are "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious when the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983)

> (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).

Id.

Because this Court has ruled that Petitioner was unlawfully arrested in October 2025 without a warrant, this Court also concludes that the arrest violated Section 706(2)(A). However, because Petitioner's only requested form of relief is not appropriate under the circumstances of this case, the Petition must be denied as to Count II. The denial is without prejudice to the filing of an amended petition that seeks relief other than immediate release.

## III. Count III

Count III alleges "there is no final order of removal, and there doesn't appear to be one in the reasonably foreseeable future." [Petition at ¶ 54.] However, the 3/31/26 IJ Order is now a final order of removal. The portion of Count III based on the lack of a final order of removal is therefore denied, without prejudice to the filing of an amended petition addressing the current status of Petitioner's removal proceedings.

Count III also alleges that the lack of adequate medical treatment at OMDC "raise[s] constitutional concerns." Id. at ¶ 58; see also id. at ¶ 34 (alleging Petitioner was diagnosed with a serious medical condition in December, but at OMDC, he "has not had the treatment he requires").

> Notwithstanding the general rule that **prisoners** may not challenge their conditions of confinement in habeas, both the Supreme Court and the Ninth Circuit has left open whether an **immigration detainee** may challenge conditions of confinement through habeas. Ziglar v. Abbasi, 582 U.S. 120, 144-45 (2017) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of confinement") (quoting Bell v. Wolfish, 441 U.S. 520, 526, n.6 (1979)); Roman v. Wolf[,] 977 F.3d 935, 941-42 (9th Cir. 2020) (declining to decide whether a writ habeas corpus is the proper vehicle to pursue noncitizen detainee's claim because plaintiffs also brought a class action seeking declaratory and injunctive relief);

Zepeda Rivas v. Jennings, 845 F. App'x 530, 535 (9th Cir. 2021) (doing the same); see also Kaur v. United States Dep't of Homeland Sec., No. 1:25-cv-01726-TLN-SCR, 2025 WL 3542139, at *1 (E.D. Cal. Dec. 10, 2025) (noting that the question of "under what circumstances conditions of confinement claims are properly brought through habeas remains open"). While district courts are divided, many have exercised their habeas jurisdiction to review conditions of confinement claims by immigration detainees. Calderon v. Barr, No. 22-cv-00891-KJM-GGH, 2020 WL 2394287, at *2 (E.D. Cal. May 12, 2020), *report and recommendation adopted*, No. 22-cv-00891-KJM-GGH, 2020 WL 2543805 (E.D. Cal. May 19, 2020) (collecting decisions by district court faced with conditions of confinement habeas petitions during COVID-19 and concluding that the "vast majority" found "jurisdiction appropriate under 28 U.S.C. § 2241" and discussing counterarguments).

Given that Petitioner lacks the ability to bring any other claims that would remedy the alleged violations of her constitutional rights caused by the conditions of confinement, the Court concludes that habeas jurisdiction is appropriate here. The civil rights remedies to which the Ninth Circuit directs prisoners' conditions of confinement claims are not available to Petitioner. The comprehensive congressional scheme established by the Prison Litigation Reform Act does not apply to Petitioner as a civil detainee. 18 U.S.C. § 3626(g)(3); 42 U.S.C. § 1997e(h); Agyeman v. INS, 296 F.3d 871, 886 (9th Cir. 2002). Section 1983 governs suits against state actors and therefore does not reach claims arising out of federal detention. And the Supreme Court has declined to extend Bivens [v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)], which allows for suits against federal actors, to noncitizens challenging unconstitutional detention conditions. Ziglar, 582 U.S. at 139-47. Therefore, the "rationales behind Nettles and the Supreme Court's Preiser line of cases[[5]] - in particular, the need to

---

[5] In Nettles v. Grounds, the habeas petitioner was a California state prisoner. See 830 F.3d 922, 925, 927 (9th Cir. 2016). The Ninth Circuit held that the petitioner's claim challenging his disciplinary proceedings for an alleged rules violation could not be asserted in a habeas case and must be raised in a Section 1983 claim because, even if he prevailed, it would not necessarily affect the length of his confinement. See id. at 934-35.

> impose the correct set of statutory procedural safeguards on state prisoner claims - do not apply in a case involving federal immigration detainees." Zepeda Rivas v. Jennings, 465 F. Supp. 3d 1028, 1035-36 (N.D. Cal. 2020) (quotations omitted).

Hernandez Ancelmo v. Kaiser, No. 1:26-cv-05579-DJC-CSK, 2026 WL 3217049, at *5 (E.D. Cal. Oct. 27, 2026) (footnote omitted).

This Court agrees with the analysis in Hernandez Ancelmo and concludes that it is possible for Petitioner to challenge the conditions of his confinement in a Section 2241 petition. However, the allegations in the Petition about the lack of adequate medical treatment are insufficient to warrant relief. See, e.g., id. at *7 ("There is no set of conditions short of release that could remedy the violations claimed by Petitioner. Petitioner contends - and Respondents do not dispute - that she has not only been deprived of available medication while in custody, but also that 'the facility simply does not have the proper medical treatments available to manage her escalating heart, blood pressure, and cancer-related health issues.'" (citation omitted)). That portion of Count III is therefore denied, without prejudice to the filing of an amended petition.

## IV. Application

In the application, Petitioner seeks a temporary restraining order ("TRO") "directing Respondents to immediately release Petitioner from their custody and enjoining the Respondents from relocating Petitioner outside of the Southern District of California pending further Order of the Court." [Application at 1-2.] In addition, Petitioner asks this Court to issue an order to show cause why the should not be converted into a preliminary injunction. See id. at 2. The Application was prompted, in

---

In Preiser v. Rodriguez, New York state prisoners filed Section 1983 actions challenging the deprivation of good-conduct-time credits following disciplinary proceedings. See 411 U.S. 475, 476 (1973). The United States Supreme Court stated that "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." Id. at 499.

part, by the death of Petitioner's step-father and Petitioner's desire to attend his funeral. See McGoldrick Decl. at pg. 2.

While this Court deeply sympathizes with Petitioner and understands his desire to be with his family during this time, the Application's request for immediate release must be denied because the Petition has been denied, without prejudice. As to Petitioner's request for a TRO prohibiting Respondents from relocating Petitioner outside of this district, Respondents are reminded that this Court has adopted the standard procedures set forth in Chief Judge Order No. 144. See Minute Order, filed 8/17/26 (dkt. no. 3). Paragraph 4 of Chief Judge Order No. 144 states: "To preserve the Court's jurisdiction pending a ruling on the Petition, **Respondents shall not transfer Petitioner outside the Southern District of California unless the Court orders otherwise.**" (Emphasis added.) Petitioner's Application is granted insofar as this Court reiterates that Respondents are prohibited from transferring Petitioner outside if this district. Because there is already an order in effect giving Petitioner the relief sought in the Application, it is not necessary to issue a TRO or a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Petitioner Yves Junior Rodney's "Petition for Writ of Habeus [sic] Corpus," filed August 14, 2026, is DENIED. The denial of the Petition is WITHOUT PREJUDICE to the filing of an amended petition that addresses the issues identified in this Order. If Petitioner chooses to file an amended petition, he must do so by **November 27, 2026**. If Petitioner does not file an amended petition, final judgment will be entered and the case will be closed on **November 30, 2026**.

Further, Petitioner's Application for Temporary Restraining Order and Order to Show Cause, filed November 11, 202, is GRANTED IN PART AND DENIED IN PART. The Application is GRANTED insofar as Respondents are REMINDED that this Court's August 17, 2026 minute order adopted Chief Judge Order No. 144 prohibits them

from transferring Petitioner outside the Southern District of California unless this Court orders otherwise. Petitioner's Application is DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 12, 2026.

/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

**<u>YVES JUNIOR RODNEY VS. CHRISTOPHER LAROSE ET AL.</u>; CASE NO. 3:26-CV-04666-LEK-GC; ORDER: DENYING "PETITION FOR WRIT OF HABEUS [sic] CORPUS" WITHOUT PREJUDICE; AND GRANTING IN PART AND DENYING IN PART PETITIONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**